## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**TALAT BASHIR and**
**NAHEED BASHIR,**

          **Debtor-Appellants,**

                                      **Case No. 16-cv-1319-DRH**
**vs.**                                     **Bankruptcy Case No. 15-31677**

**KEVIN SIEVERS and**
**MARY SIEVERS,**

          **Claimant-Appellees.**

### MEMORANDUM & ORDER

**HERNDON, District Judge**:

### I. Introduction

This is an appeal from the bankruptcy court's November 30, 2016 Order filed by Talat Mahammad Bashir and Naheed Talat Bashir (hereinafter "Appellants") concerning Claim 9-2 filed by Kevin and Mary Sievers (hereinafter "Appellees"). Following a trial on the matter, the bankruptcy court ultimately allowed Appellees an unsecured claim in the amount of $57,595.77 against Appellants. (*In re Talat Mahammad Bashir and Naheed Talat Bashir,* BK Case No. 15-31677, Doc. 1).[1] For the reasons set forth below, the Court **AFFIRMS in part and REVERSES in part** the bankruptcy court's Order.

---

[1] Further reference to the bankruptcy court's docket in this order will include "Bk.Doc." prior to the document number to differential from appellate filings in this case.

## II. <u>Background</u>

In 2008, Appellee Kevin Sievers, a general contractor, built a seven bedroom residential property at 61 Solar Circle, Litchfield, Illinois. Sievers was unable to sell the property because of the market crisis, so in 2010, he entered into a two-year lease with Appellants Talat and Naheed Bashir. Prior to the Bashirs, Appellee's sons were residing on the property.

The lease provided that the Appellants would pay $3000 per month in rent, the home would remain on the market to be shown during the rental period, and the Appellants would return the home "in its present condition" upon vacating the premises. When the lease expired, Appellants stayed in the home and continued renting the property month-to-month until June 30, 2012, when a one-year lease renewal was executed. The lease renewal agreement raised rent to $4000 per month, of which $1000 was designated for the cost of repairs to the home each month. Appellants later vacated the premises in early July 2013.

After moving out of the home in July 2013, Appellees sent Appellants a bill for $67,000 to cover repairs to the home following their residency. This amount was above the approximately $15,000 Appellants had already paid for repairs. Appellees allege that the Appellants family severely damaged the property to a tune of roughly $80,000. Appellants challenged the bill and Appellees ultimately filed suit in Montgomery County, Illinois, on October 22, 2013.

Subsequent to the Montgomery County action, on October 23, 2015, Appellants filed a Chapter 13 bankruptcy petition. (Bk.Doc. 173). Thereafter, they

filed a Schedule F, setting forth creditors with unsecured non-priority claims, which identified Appellees Kevin and Mary Sievers as holding a "contingent, unliquidated, disputed" claim of unknown value, subject to the pending litigation in Montgomery County (Bk.Doc. 27). Appellees filed a "Proof of Claim" (Claim 9-1) on January 28, 2016, which was later amended in February (Claim 9-2), alleging a claim of $65,232.96 for damages pursuant to the aforementioned lease and lease renewal. Appellants objected to the claim on various grounds. (Bk.Doc. 81).

On May 19, 2016, the bankruptcy court entered a pre-trial order setting a discovery deadline of July 18, 2016, and scheduled trial on the Appellees' claim for August 18, 2016. (Bk.Doc. 115). On July 22, 2016, Appellants filed a memorandum regarding the status of the case, in which they notified the Court that Appellants' counsel received no discovery responses from Appellees on or before the July 18, 2016 deadline. (Bk.Doc. 124). Thereafter, on July 26, 2016, Appellants filed a motion to show cause for Appellees failure to comply with the bankruptcy court's May 19, 2016 Order. (Bk.Doc. 129). The motion requested that Appellees' claim be disallowed entirely, or in the alternative, sanctions be imposed in the form of attorneys' fees and stricken pleadings. (*Id.*).

Appellees provided discovery on August 1, 2016, and later filed an objection to the motion to show cause. They argued that the documents provided were virtually identical to those documents already provided in the Montgomery County case (Bk.Doc. 146). A hearing on the motion took place on August 11, 2016, during which the bankruptcy court held that "Kevin & Mary Sievers are

prohibited from introducing at the trial any new documents that were not previously in discovery." (Bk.Doc. 147). Appellants request for sanctions was denied. The trial on Appellee's Claim 9-2 was also continued until October 6, 2016. (*Id.*). Thereafter, on the Appellants' motion (Bk.Doc. 164), the evidentiary hearing was again continued until November 22, 2016 (BK.Doc. 165).

The bankruptcy court held a trial concerning Claim 9-2 and Appellants' objection to the claim on November 22, 2016, and November 29, 2016. At the conclusion of the trial, the bankruptcy court announced its' findings of fact and conclusions of law on the record (Bk.Doc. 173). Thereafter, the bankruptcy court issued a written Order finding that Appellees had an allowed unsecured claim in the amount of $57,595.77 (*id.*).

Appellants subsequently filed a notice of appeal to have the matter reviewed by this Court on December 8, 2016 (Doc. 1). Appellants filed their brief in support of the appeal on April 7, 2017 (Doc. 17). Thereafter, on May 16, 2017, Appellees filed their brief seeking that the bankruptcy court's order be affirmed in its entirety (Doc. 27), to which Appellants replied (Doc. 37). The Court set the matter for hearing, and on July 20, 2017, the Court heard oral arguments on the appeal (Doc. 41).

### III. <u>Standard of Review</u>

Pursuant to 28 U.S.C. § 158, a federal district court has jurisdiction to hear appeals from the rulings of the bankruptcy court. District courts apply a dual standard of review in bankruptcy appeals. The bankruptcy judge's findings of fact

are reviewed for clear error, while conclusions of law are reviewed *de novo*. *First Weber Group, Inc. v. Horsfall*, 738 F.3d 767, 776 (7th Cir. 2013); *Stamat v. Neary*, 635 F.3d 974, 979 (7th Cir. 2011); *Wiese v. Cmty. Bank of Cent. Wis.*, 552 F.3d 584, 588 (7th Cir. 2009) *In re ABC-Naco, Inc.*, 483 F.3d 470, 472 (7th Cir. 2007). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). The Court reviews mixed questions of fact and law *de novo*. *Mungo v. Taylor*, 355 F.3d 969, 974 (7th Cir. 2004).

## IV. Analysis

In this case, Appellants present three issues as the basis for their appeal of the bankruptcy court's Order concerning Claim 9-2: (1) whether the bankruptcy court applied the proper burdens of proof and persuasion to Appellees' Claim 9-2; (2) whether the bankruptcy court abused its discretion in denying Appellants' request for sanctions based on Appellees' delay in providing discovery responses; and (3) whether the bankruptcy court erred in failing to apply, or consider, Illinois landlord-tenant, contract or tort law in determining the validity and amount of Appellees' claim for property damages. The Court shall address each in turn.

1. **The bankruptcy court applied the incorrect burdens of proof and persuasion to Claimant-Appellees' disputed claim for damages.**

Appellants first argue that the bankruptcy court committed reversible error in erroneously shifting the burdens of proof and persuasion to them in order to disprove Appellees' Claim 9-2. Specifically, Appellants argues that Claim 9-2 failed to comply with Rule 3001(f)'s mandate that a claim must be filed "in accordance with these rules." As such, the claim was entitled to no *prima facie* assumption of validity. Appellants go on to argue that even if the claim was *prima facie* valid, Appellees' bore the burden to produce evidence proving their claim and the demanded damages amount. Appellants argue that the bankruptcy court erred in assigning both the burden of going forward and the burden of persuasion to Appellants. Appellee argues that the bankruptcy court's allocation of burdens was correct pursuant to Rule 3001.

Bankruptcy Rule 3001 sets forth the procedures under which claims are filed and adjudicated. The procedural rules applicable to this particular case are as follows:

- o A creditor must file a written proof of claim setting forth a creditor's claim. "A proof of claim shall conform substantially to the appropriate Official Form." FED. R. BANKR. P 3001(a).

- o The "appropriate Official Form" is Official Form 10.

- o "A proof of claim executed and filed in accordance with these rules shall constitute *prima facie* evidence of the validity and amount of the claim." FED. R. BANKR. P 3001(f).

As cited above, a properly executed and filed proof of claim is *prima facie* evidence that a claim is valid. FED. R. BANKR.P. 3001(f); I*n re Airadigm*

*Communications, Inc.*, 616 F.3d 642, 659 (7th Cir.2010); *Matter of Carlson*, 126 F.3d 915, 921–22 (7th Cir.1997). A proof of claim is sufficient if it conforms substantially to Official Form 10, *see* FED. R. BANKR.P. 3001(a), and gives specific notice of the creditor's intent to hold the bankruptcy estate liable for a debt or other right to payment. *In re marchFirst, Inc.*, 431 B.R. 436, 443 (Bankr.N.D.Ill.2010); *In re Hood*, 449 F. App'x 507, 509 (7th Cir. 2011). Official Form 10 instructs the claimant to "attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of liens."

*Prima facie* validity simply means that all the facts in the claim are presumed to be true unless disproved by some evidence to the contrary. If a claim's *prima facie* validity is lost, then the creditor has the initial burden of proving that the claim exists and the amount of that claim. Bankruptcy Rule 3001 provides that proof of claim filed in accordance with requirements set forth therein constitutes *prima facie* evidence of the validity and amount of a claim and thus, generally shifts the burden of rebutting the validity of a claim to the objecting party. See FED. R. BANKR.P. 3001(f); *In re Sentinel Mgmt. Group, Inc.*, 417 B.R. 542, 550 (Bankr.N.D.Ill.2009) (Squires, J.). However, claims that fail to comply with basic requirements of Bankruptcy Rule 3001 do not benefit from the presumption of validity contemplated by this rule. *Matter of Stoecker*, 5 F.3d 1022, 1028 (7th Cir.1993) ("If the documentation [required by Bankruptcy Rule

3001] is missing, the creditor cannot rest on the proof of claim...."). Creditors whose claims have been objected to are free to supplement their proof of claim to make a *prima facie* showing that they hold valid claims. *Id.* (noting that initial failure to meet the requirements of Bankruptcy Rule 3001 does not bar the creditor from establishing the claim by responding to an objection or amending an incomplete proof of claim).

Here, Appellants contend that Appellee's proof of claim failed to comply with Rule 3001(f), as it "comprised nothing more than bare allegations of the Bashirs' liability," and thus, was not entitled to *prima facie* validity (Doc. 17, pg. 35); *In re Stoecker*, 5 F.3d 1022, 1028 (7th Cir.1993)(where the claimant fails to provide this required documentation, the court will not accord its claim *prima facie* validity). In response, Appellees argue that the bankruptcy court correctly applied the burdens of proof and persuasion, as Appellees' claim was *prima facie* valid. Further, Appellees allege that Appellants waived any objection to challenge the *prima facie* validity of their claim under FED. R. BANKR.P. 3001 and Official Form 10.

Having reviewed the record, the Court finds that Appellees failed to provide proper documentation of their claim to comply with Rule 3001. Appellees' claim was filed with very little information supporting its validity. Appellees provided nothing more than a state court complaint, lease agreement and renewal and a "damages calculation" totaling $65,232.96 for the amount owed. However, they failed to itemize a list of the damage allegedly caused by the Appellants during

their occupancy. (Doc. 17-1). In order to defeat Appellees claim, Appellants filed an objection alleging that the entire claim was not owed. The objection noted that the claim was based on a complaint filed in Montgomery County Court that had not yet been reduced to a judgment. Appellants also objected arguing that Appellees failed to attach documentation proving the debt owed. (Doc. 17-1). However, despite the aforementioned, the bankruptcy court ultimately shifted the burden to the Appellants, thus requiring them to prove Appellees did not have a valid claim. (Bk.Doc. 187, pg. 4-5).

The Court notes that Appellants had very little notice of the claim against them, as Appellees' claim essentially offered only the amount of money sought for "repairs" without including an itemized list of the alleged damage necessitating those repairs. To defeat the claim, Appellants had to come forward with sufficient evidence and facts tending to defeat the claim, despite the inadequate notice of the claim. Appellants were ultimately unaware of the claim that they were forced to disprove, aside from a total amount of damages alleged. Furthermore, as it turns out, issues surrounding production of evidence further disadvantaged Appellants in this respect. Ultimately, the Court finds that Appellees' proof of claim was not entitled to be treated as *prima facie* valid based on its failure to comply with Rule 3001.

Failing to file a proof of claim in compliance with the FEDERAL RULES OF BANKRUPTCY PROCEDURE merely deprives the proof of claim of *prima facie* validity. See FED. R. BANKR. P. 3001(f). Therefore, given the Court's finding that Appellee's

proof of claim was not entitled to *prima facie* validity, the bankruptcy court prematurely shifted the burden of proof to Appellants. Accordingly, this Court reverses the bankruptcy judge's finding and remands this case for retrial, during which the correct burden shall be applied. Additionally, Appellees must set forth proof as to the claim's validity and the amount alleged, with regard to each allegation of damage allegedly caused by Appellants. Appellees' proof of claims shall also be subjected to cross-examination by Appellants' counsel prior to the bankruptcy court's ruling.

## 2. The bankruptcy court did not abuse its discretion in denying Debtor-Appellants' request for sanctions.

Appellants argue that the bankruptcy court erred in denying their request for sanctions. Specifically, Appellants raise three specific issues they believe warrants reversal: (1) the discovery delay unfairly prejudiced them in their ability to prepare for trial; (2) when the discovery responses were provided, they were both incomplete and disorganized; and (3) they were prejudiced by the Sievers' use of an amended trial exhibit list at trial.

A bankruptcy court's ruling on a motion for discovery sanctions is reviewed for abuse of discretion. *Golant v. Levy (In re Golant)*, 239 F.3d 931, 937 (7th Cir. 2001). To overrule a denial of sanctions for violation of the court's discovery order, a party must show abuse of discretion and that the ruling worked "to his actual and substantial prejudice". *In re Salem*, 465 F.3d 767, 778 (7th Cir. 2006) (citing *Walker v. Mueller Indus., Inc.*, 408 F.3d 328, 334 (7th Cir. 2005)). Also, the Seventh Circuit has warned that an imposition of sanctions "must be

proportionate to the circumstances surrounding the failure to comply with discovery." *Langley v. Union Elec. Co.*, 107 F.3d 510, 515 (7th Cir. 1997) (quoting *Crown Life Ins. Co. v. Craig*, 995 F.2d 1376, 1382 (7th Cir. 1993). Further, FEDERAL RULE OF CIVIL PROCEDURE 37 applies to contested bankruptcy claims. FED. R. BANKR. P. 9014(c), 7037.

A review of the record indicates that Appellants fail to satisfy the aforementioned factors. Ultimately, Appellees turned over duplicative state court discovery responses that were already in the Appellants' possession (Bk. Doc. 200, pg. 7-8). The bankruptcy court also limited Appellees, for trial purposes, to those documents that were previously produced in the state court. (Bk.Doc. 200, pg. 4). Moreover, the bankruptcy court specifically asked Appellants' counsel how much time he needed to prepare for trial, and continued the trial to accommodate his request (Bk.Doc. 200, pg. 9). Finally, there is no evidence of bad faith or willfulness in not disclosing the discovery responses at an earlier date.

Regarding the alleged disorganization of the disclosures— which again had been in the Bashirs' possession the entire time—Appellees' counsel stated on the record that "[e]ach folder contains photographs that -- and the folders are labeled, interior damage, exterior damage, appliance damage and so on. Each one is labeled." (Bk. Doc. 200, pg. 6). Even if the Appellants' attorney might have preferred that the discovery was organized a different way, she has not shown prejudice from the alleged disorganization or from the bankruptcy judge's decisions declining sanctions. The record clearly indicates that Appellees' counsel

made an effort to organize the documents in a productive way, and therefore, this Court finds that the bankruptcy court's findings were sound. The bankruptcy court did not abuse its discretion in declining to impose sanctions.

### 3. The bankruptcy court erred when determining the validity and amount of Claimant-Appellees' claim for property damages.[2]

Finally, Appellants argue that the bankruptcy court erred in failing to consider provisions of Illinois landlord-tenant, contract or tort law when rendering her judgment, instead solely applying a procedural standard from Rule 30001(f). Appellants argue this ultimately placed a greater burden on them than required by law. Appellees counter arguing that the terms of the lease govern this dispute, and the bankruptcy court correctly applied the applicable standards. (Doc. 27, pg. 33)(citing *In re Kimbrell Realty/Jeth Court, LLC*, 483 B.R. 679, 687 (Bankr. C.D. Ill. 2012) ("The fundamental policy of freedom of contract is a strong and well-established public policy in Illinois."); *American Access Cas. Co. v. Reyes*, 2013 IL 115601, ¶ 9 (Ill. 2013) ("When we assess whether a statute provision prevails over a contractual provision, however, we must keep in mind that parties have freedom to contract as they desire."); *Country Preferred Ins. Co. v. Whitehead*, 2012 IL 113365 (Ill. 2012) ("It is in the interest of the public that persons should not be unnecessarily restricted in their freedom to make their own contracts.").

Appellants specifically challenge the bankruptcy court's order awarding $57,595.77 in damages to Appellees, based on an alleged standard set forth in

---

[2] In light of this matter being remanded for a new trial, the Court need not address this issue. However, the Court finds it beneficial to offer the bankruptcy court some guidance on the matter, and in the event of an appeal, to offer this Court's position on damages in this case.

their lease agreement, rather than applying the common law standards of landlord-tenant, tort, and contract law. The lease agreement directed that Appellants "shall return possession of the Leased Premises in its present condition". (Doc. 17-1, pg. 14). Appellants argue that the bankruptcy court implicitly found that the lease obligated them to return the property in the identical condition in which they rented it. They contest this point arguing that the abovementioned language "is nothing more than a rote recitation of established Illinois law," given that an Illinois tenant is always required to return leased premises to the condition it was in when the tenant took possession, with normal wear and tear expected. *Ikari v. Mason Properties*, 314 Ill. App. 3d 222, 228, 731 N.E.2d 975, 980 (2000) ("An Illinois tenant is always required to leave a residence 'in the same condition as it was when possession was taken,...normal wear and tear excepted."); *Miller v. McGee*, 2016 IL App (4th) 150717-U, ¶¶ 38-40; *Pyramid Enterprises, Inc. v. Amadeo*, 10 Ill. App. 3d 575, 579 (1973).

Upon review of the record, the Court notes that neither during the bankruptcy judge's oral pronouncement of her findings at the conclusion of the case, nor in the written order memorializing said findings (Bk.Doc. 173), did the bankruptcy court enter any conclusions of law, specifically addressing any analysis of the legal standards on which the court's conclusions were based. On the record, the bankruptcy judge reduced some of the requested damages, in part, seemingly on the basis of her own life experiences, and perhaps because she was applying the common law standard of wear and tear. *See, e.g.,*Bk.Doc. 188, pg.

60-61). It also appears that the bankruptcy court applied the contractual provision, but in some instances, reduced the damages arbitrarily on her best guess in order to arrive at fair market value. *See, e.g.,* Bk.Doc. 188, pg. 59-60. However, at no time did the bankruptcy court verbalize its analysis to make it clear.

The Court also points out that the home located at 61 Solar Circle, Litchfield, Illinois, was not a new home, despite it being labeled "new" by Appellees. The property was two years old when the Appellants first rented it, and had been lived in by two of Appellees' sons prior to Appellants. Further, Appellees did not take any photographs of the home after the sons moved out to document any damage or wear and tear from their occupancy (Bk.Doc. 187, pg. 248-49).

Next, looking to Appellants argument that the bankruptcy court did not take into account ordinary wear and tear in calculating damages, the Court finds that assessing damages against Appellants for normal wear and tear is clearly improper. As mentioned above, "a tenant is required only to leave [a residential property] in the same condition as it was when possession was taken, normal wear and tear excepted." *Ikari v. Mason Properties*, 314 Ill.App.3d 222, 228, 731 N.E.2d 975, 980 (2000). " 'If the premises are not left in that condition, normal wear and tear excepted, then the landlord has the right to hold the tenant liable for the costs of returning the premises to such condition so that they may be re-let.' " *First National Bank of Des Plaines v. Shape Magnetronics, Inc.*, 135 Ill.App.3d 288, 292, 481 N.E.2d 953, 955 (1985) (quoting *Pyramid Enterprises,*

*Inc.*, 10 Ill.App.3d at, 579, 294 N.E.2d at, 716–17); *Miller v. McGee*, 2016 IL App (4th) 150717-U, ¶ 38. Notwithstanding the lease agreement in this case, the record clearly dictates that Illinois landlord-tenant law controls. *See Towne Realty, Inc. v. Shaffer,* 331 Ill. App. 3d 531, 542, 773 N.E.2d 47, 56 (2002) *Windsor at Seven Oaks v. Kelly*, 113 Ill.App.3d 978, 980–81, 69 Ill.Dec. 791, 448 N.E.2d 251, 253 (1983) ("Where a landlord has drafted the lease, a court will not impose a responsibility upon the tenant unless the circumstances and the contract clearly indicate that the tenant intended to assume such a responsibility").

Furthermore, the bankruptcy court simply failed to provide an analysis acknowledging or considering the difference between normal wear and tear and those damages that were in excess. When a home is lived in for five years, things inevitably become worn, unclean, or damaged to a certain degree, and things, like painting, may need to be redone. See e.g., *Tobin v. McClure*, 144 Ill. App. 3d 33, 35-36(1986) (nail holes are normal wear and tear; cost of repair is not taxable to defendant even if entire apartment must be painted because touch up is not possible). Ultimately, if Appellees wish to market a five-year-old home as "new", the Appellants cannot be responsible for the cost to restore the house to a "like new" condition. *Pyramid Enterprises, Inc.*, 10 Ill.App.3d at, 579, 294 N.E.2d at, 716–17(A landlord may hold a tenant responsible for the cost of returning the premises to their initial condition, save for normal wear and tear, but cannot make unnecessary repairs or decorate the premises at the tenant's expense); §

8:100.Tenant's obligation for damage and to avoid waste, 2 ILLINOIS REAL PROPERTY § 8:100 (2018).

Therefore, upon retrial, the Court recommends that the bankruptcy court advise the parties of the standard to be applied when calculating damages, and provide a thorough analysis of its' damages calculation on the record.

**V. <u>Conclusion</u>**

Having carefully reviewed the record before it, the Court **AFFIRMS in part and REVERSES in part** the Bankruptcy Court's Order allowing Claim Number 9-2 in the amount of $57,595.77 (*In re Talat Mahammad Bashir and Naheed Talat Bashir,* BK Case No. 15-31677, Doc. 173). The matter is **REMANDED** to the bankruptcy court for retrial consistent with this order.

**IT IS SO ORDERED.**

Judge Herndon
2018.03.29
12:46:56 -05'00'

**United States District Judge**